# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLENNIUM LABORATORIES OF CALIFORNIA, INC, a California corporation,<br><br>                                   Plaintiff,<br>    vs.<br><br>BRIAN SLATTERY ASSOCIATES, INC., a Florida corporation; BRIAN P. SLATTERY, an individual,<br><br>                                   Defendant. | CASE NO. 09-CV-0409 H (RBB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

On March 16, 2009, Plaintiff filed an ex parte motion for a temporary restraining order ("TRO") against Defendant. (Doc. No. 4.) After the Court requested briefing, Defendants filed a response in opposition to the motion for temporary restraining order on March 20, 2009. (Doc. No. 8.) Plaintiff filed its reply in support of the motion on March 26, 2009. (Doc. No. 10.) The Court concludes that this matter is appropriate for resolution without oral argument and submits the motion under Local Rule 7.1(d)(1). For the following reasons, the Court denies Plaintiff's motion for a temporary restraining order.

## Background

Plaintiff Millennium Laboratories of California, Inc. ("Millennium CA") is in the business of providing urine drug testing to government insurance programs and private insurance companies. (Appel Decl. ISO Mot. for TRO ["Appel Decl."] ¶ 2.) Defendant Brian

- 1 -                                                                                                  09cv409

1  Slattery Associates, Inc. ("BSA") is an independent contractor that marketed and sold drug
2  testing services for Millennium CA. (Id. ¶ 3.)

3  Effective August 1, 2008, Millennium CA and BSA entered into an Independent
4  Contractor Agreement ("ICA") under which BSA was to provide marketing services for
5  Plaintiff. (Slattery Decl. in Opp. to Mot. for TRO ["Slattery Decl."] ¶ 3; Appel Decl. Ex. A.)
6  More than a year earlier, BSA began performing the same marketing services for a legally
7  unrelated entity, Millennium Laboratories LLC in Florida ("Millennium FL"). (Slattery Decl.
8  ¶ 4.) Plaintiff states that, before working for Millennium FL, BSA possessed no customer
9  information. (Appel Supp. Decl. ¶ 3.) According to Plaintiff, BSA acquired customer
10 information developed by Millennium FL and sales consulting companies. (Id.)

11 Near the end of 2007, one of the owners of Millennium FL entered into an oral
12 agreement with Jim Slattery (Brian Slattery's uncle) to assist Jim Slattery in founding
13 Millennium CA. (Slattery Decl. ¶ 7.) At that time, it was Jim Slattery's understanding that
14 Millennium FL would provide financial and strategic support to Millennium CA for a financial
15 interest in Millennium CA. (Appel Supp. Decl. ¶ 4.) However, Millennium FL began
16 struggling financially and eventually shut down its operations. (Id.) Plaintiff states that the
17 principals of Millennium FL entered into an arrangement with Millennium CA to transfer and
18 assign Millennium FL's customer accounts, customer and prospect lists, and business method
19 information to Millennium CA. (Id.)

20 Millennium CA explains that, when it acquired valid laboratory licenses in March 2008,
21 it hired BSA to facilitate the transition of customers from Millennium FL to Millennium CA.
22 (Id. ¶ 5.) Plaintiff claims that an oral agreement governed the relationship until the parties
23 executed the ICA in August 2008. (Id.) The ICA provides that Millennium CA is hiring BSA
24 as an independent sales contractor. (Id. Ex. A.) The ICA further states that BSA must act in
25 the best interests of Millennium CA, but acknowledges that BSA would not be providing its
26 services exclusive to Millennium CA. (Id. ¶ 1.) Under the ICA, BSA was merely precluded
27 from "perform[ing] urine drug testing services for any other business which directly competes"
28 with Millennium CA without Plaintiff's consent. (Id.)

> Under a heading marked, "Trade Secrets in General," the ICA provides:
>
> During the course of this Agreement, Contractor will have access to trade secrets of Company. A "Trade Secret" is information which is not generally known to the public and, as a result, is of economic benefit to Company. Company and Contractor agree that Trade Secrets shall include, and are limited to, all information developed or maintained by Company and comprising the following items, whether or not such items have been reduced to tangible form (e.g., physical writing): Laboratory techniques, laboratory designs, . . . laboratory business plans, laboratory customer list and existing and developing software products.

(Id. ¶ 11.) The ICA went on to explain that trade secrets would include "information developed by Contractor for Company during the term of this Agreement." (Id.) However, trade secrets would not include any information that was "independently developed without the use, directly or indirectly, of the Trade Secrets," information "obtained from a third party which did not itself obtain it in confidence and was not obligated to keep such information confidential," or information "within the Contractor's possession prior to disclosure by the Company." (Id.) The ICA provides that, upon termination of the agreement, BSA was to "surrender to Company all Company provided documents and materials in its possession and/or control." (Id. ¶ 12.2.)

Defendant BSA states that, when it entered into the ICA, it had already developed a "substantial customer and prospect list." (Slattery Decl. ¶ 11.) Defendant avers that it did not develop for Plaintiff any information defined as a trade secret under the ICA. (Id. ¶ 13.)

**Discussion**

**I.      Motion for Temporary Restraining Order – Legal Standard**

Under Rule 65 of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order ("TRO") without notice to the opposing party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed.

R. Civ. P. 65(b). After due consideration of the evidence submitted by Millennium CA, the Court declined to issue a TRO on an ex parte basis and ordered briefing from Defendant. (Doc. No. 7.) The Court now applies the standard for granting a preliminary injunction and concludes that Plaintiff is not entitled to injunctive relief on the evidence before the Court.

A plaintiff is entitled to a preliminary injunction "when he demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." Sardi's Resturant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985) (emphasis in original). The Ninth Circuit explains that "[t]hese are not separate tests, but the outer reaches 'of a single continuum.'" Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co., 774 F.2d 1371, 1375 (9th Cir. 1985) (quoting Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978)).

The decision to grant or deny a preliminary injunction "rests in the sound discretion of the court." Dymo Indus., Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964). However, the Supreme Court has stated that a motion for preliminary injunction carries with it a "requirement for substantial proof" higher than even a motion for summary judgment. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Id. (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948, pp.129-30 (2d ed. 1995)). Injunctions that require affirmative conduct from the burdened party are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." Dahl v. HEM Pharm. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993).

In this case, Plaintiff has not made a sufficient showing that it has a right to any information in Defendant's possession. Its ICA with Defendant defines trade secrets as limited to information developed or maintained by Millennium CA or information developed by BSA for Millennium CA during the term of the agreement. (Appel Decl. Ex. A, ¶ 11.) Plaintiff does not allege that Defendant is refusing to return any information supplied by Millennium

1 CA. Instead, Plaintiff presumes that Defendant must have developed customer information
2 for Millennium CA during the term of the agreement. Defendant swears that it developed no
3 such information because it had already accumulated a substantial customer and prospect list
4 during its involvement with Millennium FL. (Slattery Decl. ¶¶ 11, 13.) Plaintiff has
5 established no entitlement to this information. Millennium CA and Millennium FL are not
6 legally related. Though Plaintiff mentions an agreement between Millennium CA and
7 Millennium FL granting Plaintiff a right to Millennium FL's customer information, Plaintiff
8 provides no evidence of such an agreement. Finally, the ICA itself states that its trade secret
9 provisions do not apply to information developed independently by BSA without use of
10 Millennium CA's trade secrets or information obtained from a third party under no
11 confidentiality agreement. (Appel Decl. Ex. A, ¶ 11.)

12 Additionally, the Court notes that the ICA requires BSA to surrender upon termination
13 all documents and materials provided by Millennium CA. (Id. ¶ 12.2.) As to trade secrets
14 developed during the term of the agreement, the ICA merely proscribes misappropriation and
15 unfair competition. (Id. ¶ 12.3.) Though Plaintiff has submitted some evidence that BSA is
16 currently working for one of Plaintiff's competitors, there is no evidence before the Court that
17 BSA is using Plaintiff's proprietary information in connection with that activity.

18 Because there is no showing that Defendant is misusing Plaintiff's proprietary
19 information – or even that Defendant is in possession of such information – Plaintiff has failed
20 to establish "probable success on the merits" or the "possibility of irreparable injury." Sardi's
21 Resturant, 755 F.2d at 723. With regard to the balance of hardships, the Court can make no
22 conclusions. Proprietary customer lists are of great potential value to any business entity.
23 Here, the balance of hardships will favor the party entitled to the information. To obtain
24 injunctive relief, it is Plaintiff's burden to show "by substantial proof" that it has such an
25 entitlement. See Mazurek, 520 U.S. at 972. Plaintiff has not carried that burden.
26 / / /
27 / / /
28 / / /

**Conclusion**

Accordingly, the Court denies Plaintiff's motion for a temporary restraining order. Plaintiff is free to file a motion for preliminary injunction based on new facts.

IT IS SO ORDERED.

DATED: March 27, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT